**Rick JOHNSTON et al.**

**v.**

**Earl LUNA and Bob Bullock, Secretary of State.**

**Civ. A. No. 3-5373-C.**

United States District Court,
N. D. Texas,
Dallas Division.
Jan. 20, 1972.

**356**

Linda N. Coffee, Palmer & Palmer, Dallas, Tex., for plaintiffs; A. L. Crouch, Fort Worth, Tex., for intervenors Jenkins & Wischkaemper.

Earl Luna, Luna & Jackson, Dallas, Tex., Crawford C. Martin, Atty. Gen. of Texas, Sam Jones, Pat Bailey, Asst. Attys. Gen., Austin, Tex., for defendants.

OPINION AND ORDER

Before THORNBERRY, Circuit Judge, and HUGHES and TAYLOR, District Judges.

PER CURIAM.

This Court in Carter v. Dies, N.D.Tex. 1970, 321 F.Supp. 1358, previously enjoined the enforcement of Tex.Election Code Ann. Arts. 13.07a, 13.08, 13.08a, 13.15, 13.16 (1967), V.A.T.S. The decision was based on our judgment that the State's interest in recouping election expenses was not of a sufficiently compelling nature to justify the infringement on the first amendment rights of voters in the State of Texas resulting from the imposition of any assessment whatsoever on potential primary candidates.

We did intimate in Carter v. Dies, *supra,* that an assessment of filing fees based on the State's interest in regulating the size of the ballot and preventing frivolous candidacies *might* justify either a nominal or reasonable fee. It is enough to say that House Bill No. 5 does not represent such an undertaking by the State. House Bill No. 5 is no less a device for the recoupment of election expenses than was the previous Election Code. *See* Campbell v. Davenport, 5th Cir. 1966, 362 F.2d 624. It is, therefore, no less unconstitutional.

The State argues that our holding the imposition of filing fees for revenue purposes unconstitutional will leave the State only one reasonable alternative for financing primary elections—the use of State funds. The State contends that such a use of State funds is impermissible under Waples v. Marrast, 108 Tex. 5, 184 S.W. 180 (1916), wherein the Texas Supreme Court concluded that primary elections were private affairs for the sole benefit of the political parties involved, and did not constitute a "public function" for which State funds could be used. We believe this Texas Supreme Court holding, decided in 1916 and untested since that date, to be highly ques-

tionable in light of subsequent United States Supreme Court decisions holding State primaries to be public affairs conducted for the benefit of all citizens—be they black or white, rich or poor. *See* Smith v. Allwright, 321 U.S. 649, 64 S. Ct. 757, 88 L.Ed. 987 (1944). Reliance by the State on such a questionable decision cannot have any effect on our judgment here.

Based on our previous decision in Carter v. Dies, *supra,* and the fact that there has been no modification of the Texas Election Code justifying a different result in the instant case, we hold that House Bill No. 5, providing for filing fees for candidates for public office and in the alternative for a pauper's affidavit accompanied by a petition of a certain number of qualified voters, is therefore invalid and void.

Those officials charged with the enforcement of House Bill No. 5 are enjoined from its further implementation.

The County and State Executive Committees are directed to make such rules for the primary elections for 1972 as are necessary and consistent with Carter v. Dies, *supra.*

The Court retains jurisdiction to consider any problems arising out of compliance with this Order.

## APPENDIX A

ELECTIONS — PRIMARIES — EXPENSES — ASSESSMENT OF CANDIDATES — PETITION OF VOTERS

### CHAPTER II

#### H. B. No. 5

An Act enacting temporary provisions relating to the method of conducting and financing primary elections and to the fees, assessments, and deposits levied against candidates; amending the Texas Election Code as follows: amending Section 185a, as amended (Article 13.07a, Vernon's Texas Election Code) by adding Subsection (3); amending Subsection (1), Section 186, as amended (Article 13.08); amending Section 186, as amended (Article 13.08), by adding Subsections (5), (6), and (7); adding Section 186c; repealing Section 186a, as amended (Article 13.08a), Section 186a–1 (Article 13.08a—1), and Section 194, as amended (Article 13.16); providing penalties; making the Act effective only upon the occurrence of certain conditions and fixing the expiration date if the Act becomes effective; and declaring an emergency.

*Be it enacted by the Legislature of the State of Texas:*

Section 1. Section 185a, Texas Election Code, as amended (Article 13.07a, Vernon's Texas Election Code), is amended by adding [35] Subsection (3), to read as follows:

"(3) If a candidate is unable to pay the deposit or filing fee as required by Subsection (1) of this section, in lieu of payment he may file with his application a petition of voters, as provided in Section 186c of this code, and he shall not then be required to pay any deposit, fee, or assessment as a condition for having his name printed on the ballot for either the primary election or the general election; when filing such petition, it shall be accompanied by the following affidavit:

" 'I am not financially able to pay the filing fee required to file for the office set forth in the attached application. In lieu therefor I submit the following petition signed by 10% of the number of votes cast for the _____ (Democratic, Republican, etc.) Party's candidate for Governor in the last preceding General Election in the territory in which I am running.' "

Sec. 2. Subsection (1), Section 186, Texas Election Code, as amended (Article 13.08, Vernon's Texas Election Code), is amended [36] to read as follows:

"(1) On or before the second Monday in February preceding each general primary election, the county committee shall carefully estimate the cost of printing the official ballots, renting polling places where same may be found necessary, providing and distributing all necessary poll books, blank stationery and voting booths required, compensation of elec-

---

35. V.A.T.S. Election Code, art. 13.07a, subsec. (3).

36. V.A.T.S. Election Code, art. 13.08, subsec. (1).

tion officers and clerks, and all other necessary expenses of holding the general primary and second primary in such county. On the second Monday in February, the committee shall meet and apportion such cost in such manner as in their judgment is just and equitable among the various candidates for nomination for district, county, and precinct offices who did not file with their application a supporting petition of voters as provided in Section 186c of this code, except the offices of Justice of the Court of Civil Appeals and members of the State Board of Education. Where a district office covers more than one county, the assessment of such candidate by the county shall be not more than a sum which is the quotient of the amount which he would be assessed if he represented only one county determined by the formula used to assess county candidates, when divided by the number of counties in his district. In making the assessment upon any candidate the committee shall give due consideration to the importance, emolument, and term of office for which the nomination is to be made. The committee may not assess any candidate an amount in excess of four percent of the total compensation payable for the particular term of office (full or partial) which he is seeking. Within 24 hours after adjournment of the meeting, the chairman shall mail to each person against whom an assessment is made a notice stating the amount of the expenses apportioned to him and informing him that on or before the fourth Monday in February he must pay to the chairman the difference between the amount apportioned to him and the amount of the deposit which accompanied the application which he filed with the chairman. No such person's name shall be placed on the ballot unless he complies with these requirements within the prescribed time. The notices shall be sent to the candidates by registered or certified mail, and the chairman shall obtain a receipt for each letter, postmarked by the post office at which the letter is mailed, as evidence of the mailing, and shall preserve the receipts for a period of three months."

Sec. 3. Section 186, Texas Election Code, as amended (Article 13.08, Vernon's Texas Election Code), is amended by adding [37] Subsections (5), (6), and (7), to read as follows:

"(5) Notwithstanding any other provision of this section, an assessment shall not be made against a candidate who has filed with his application a petition of voters as provided in Section 186c of this code.

"(6) In conducting the primary elections, the committee is authorized to utilize volunteer unpaid services of election judges and clerks, to accept gratuities of other services and other things of value, and to use funds derived from contributions, fund-raising events, and other lawful sources by way of supplementing the funds derived from assessments levied under this section.

"(7) If, after the committee has made the assessments authorized by Subsection (1) of this section, a court of competent jurisdiction declares the assessments to be invalid, the committee may reassess the candidates in an effort to bring the amounts within the court's delineation of permissible limits. In the event of a reassessment, the committee shall fix the date by which the new assessments must be paid, which date shall be at least 10 days after the date of the meeting at which the reassessment is made. Within 24 hours after adjournment of the meeting, the chairman shall give notice, in the manner required for notice of the original assessment, to each candidate who has not paid the original assessment. Within 30 days after the date of the meeting, the county chairman shall refund to each candidate who paid the original assessment the difference between the amount of the original assessment and the new assessment."

---

37. V.A.T.S. Election Code, art. 13.08, subsecs. (5)–(7).

Sec. 4. The Texas Election Code is amended by adding [38] Section 186c, to read as follows:

**"186c. Petition of voters in lieu of payment of assessment or fee**

"(a) Notwithstanding any provision in Section 185a, Section 186, Section 190, Section 190a, Section 193, or any other section of this code, a candidate for any public office who files with his application for a place on the ballot in the general primary election a petition which complies with this section is not required to pay the deposit, assessment, or fee required by any other section of this code. The petition must accompany the application and be filed at the same time that the application is filed. Where a candidate for a district office is required to file an application with more than one county chairman, he shall file the petition with the county chairman in the county of his residence and shall attach to the petition the name and address of each other county chairman with whom an application is filed. He shall attach to the application which is filed with each other chairman a statement that the petition has been filed, giving the name and address of the chairman with whom it is filed. The chairman with whom the petition is filed shall certify to each other county chairman in the district whether the petition complies with the requirements of this section. Where the filing deadline for the office is on or before the fourth Monday in February, the chairman shall make the certification not later than the second Monday in March. Where the filing deadline is after the fourth Monday in February, he shall make the certification within 15 days after the deadline or by the 25th day before the general primary, whichever is earlier.

"(b) A petition which is filed in lieu of the payments required by other sections of this code must be signed by qualified voters eligible to vote for the office for which the candidate is running, equal in number to at least 10 per cent of the entire vote cast for that party's candidate for governor in the last preceding general election in the territory (state, district, county, or precinct, as the case may be) in which the candidate is running. Where a candidate is running in a district or precinct which has been created or the boundaries of which have been changed since the last general election, he may request the secretary of state in the case of a district office, and the county judge of the county in which the precinct is situated in the case of a precinct office, to make an estimate in advance of the filing deadline of the number of votes cast for that party's candidate for governor within that territory at the last general election, and upon receiving such a request the officer shall make the estimate and notify the candidate and each chairman with whom the candidate files an application. The estimate shall be used as the official basis for computing the number of signatures required on the petition. If an advance estimate is not requested, the chairman with whom the petition is filed shall make the estimate before he acts on the sufficiency of the petition. In every instance, the candidate may challenge the accuracy of the estimate, and if he is dissatisfied with the final decision of the officer he may appeal the decision to any district court in the territory involved. The decision of the district court is final.

"(c) The application of a candidate who files a petition under this section must be executed by the candidate personally, and the provision in Section 190 which permits the filing of an application signed by 25 qualified voters is not available to a candidate who files a petition under this section.

"(d) The petition shall show in bold print on each page the following: 'PETITION IN LIEU OF FILING FEE TO PLACE THE NAME OF _____ ON THE PRIMARY BALLOT OF _____ PARTY FOR THE OFFICE OF _____. PLEASE READ

---

38. V.A.T.S. Election Code, art. 13.08c.

ALL TERMS CAREFULLY,' and the following information with respect to each person signing it: his address, the number of his voter registration certificate for the voting year in which the election is held and also the county of issuance if different from the county in which he resides at the time of signing, and the date of signing.

"(e) No petition may contain the name of more than one candidate. No person may sign the petition of more than one candidate for the same office, and if any person signs the application of more than one candidate for the same office, the signature is void as to all such petitions. However, a person may withdraw and annul his signature by delivering to the candidate and to the chairman with whom the petition is filed (or is to be filed, if not then filed), his written request, signed and duly acknowledged by him, that his signature be cancelled and annulled. The request must be delivered not later than five days before the last day for filing the petition. Upon such withdrawal, the person is free to sign the petition of another candidate for the same office in the same party's primary, but the withdrawal does not have the effect of relieving the candidate of his ineligibility to affiliate with some other political party during the voting year in which the election is held. The candidate from whose petition a signature is withdrawn may file additional signatures to replace the withdrawn signature at any time before the filing deadline, but signatures filed after the date of the candidate's application which may be counted toward the required number shall not exceed the number of withdrawn signatures.

"(f) To each person who signs a petition there shall be administered the following oath, which shall be reduced to writing and made a part of each page of the petition: 'I know the contents of this petition. I am a qualified voter eligible to vote in the forthcoming primary election of the _____ Party for the office for which _____ is a candidate. I have not signed the petition of any other candidate for this office or I have withdrawn my signature for any other candidate in the manner provided by law, and I have not signed the petition of a candidate who is running for any office in the primary of any other party. I understand that by signing this petition I became ineligible to affiliate with any other party or to participate in the primary elections, conventions, or other party affairs of any other party during the voting year in which this election is held.'

"(g) After a person has signed the petition of a candidate, the person's signature is void as to the petition of any candidate who is running in the primary election of any other party. He also becomes ineligible to affiliate with any other party during the voting year in which the election is held. If he participates or attempts to participate in the primary election or convention of any other party during that voting year, he is guilty of a misdemeanor and upon conviction is punishable by a fine not to exceed $1,000.

"(h) A petition may not be circulated for signatures earlier than 90 days preceding the deadline for filing the petition. Any signature obtained on or before the 91st day preceding the deadline is void. The officer who administers the oath required by Subsection (f) of this section shall verify that the correct date of signing is shown on the petition.

"(i) The secretary of state shall prescribe a form for the petition. However, a candidate may use any other form which complies with the requirements of this section."

Sec. 5. The following sections of the Texas Election Code are repealed: [39] Section 186a, as amended (Article 13.08a, Vernon's Texas Election Code), Section 186a–1 (Article 13.08a–1), and Section 194, as amended (Article 13.16).

---

39. V.A.T.S. Election Code, arts. 13.08a note, 13.08a—1 note, 13.16 note.

Sec. 6.[40] If any provision of this Act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable.

Sec. 7.[41] (a) This Act is enacted as a contingent, temporary law, to become effective only as stated in Subsection (b) of this section; and if it does become effective, it expires on December 31, 1972.

(b) This Act becomes effective only upon the condition that, before January 1, 1972:

(1) the Supreme Court of the United States does not dispose of the appeal filed in that court from the judgment of the United States District Court for the Northern District of Texas, Dallas Division, in Civil Action No. CA 3–3635–C, styled Van Phillip Carter v. Martin Dies, Jr., et al., by action which becomes final before January 1, 1972; or

(2) the Supreme Court of the United States affirms or refuses to review the judgment of the district court in the aforesaid case, or by other action taken upon an appeal of that case the Supreme Court rules that either of the following sections of the Texas Election Code as they exist before the amendments made by this Act violates the Constitution of the United States: Sections 185a, 186, 186a, 193, and 194.

(c) Not later than January 5, 1972, the Attorney General of Texas shall certify to the Governor and to the Secretary of State whether either of the two conditions stated in Subsection (b) has been fulfilled, and the Governor immediately shall issue his proclamation declaring whether this Act becomes effective. If either of the conditions for effectiveness is fulfilled, the Act takes effect on the date of the Governor's proclamation.

(d) If this Act takes effect, upon its expiration on December 31, 1972, the law as it existed before the effective date of the Act again becomes operative until otherwise provided by the Legislature.

Sec. 8. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each house be suspended, and this Rule is hereby suspended.

Passed by the House on June 4, 1971: Yeas, 110, Nays 23; passed by the Senate on June 4, 1971, by a viva voce vote.

Approved June 15, 1971.

Effective Sept. 3, 1971, 90 days after date of adjournment.

---

40. V.A.T.S. Election Code, art. 13.08c note.

41. V.A.T.S. Election Code, art. 13.08c note.